UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BETH A. O'BRIEN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Docket No. 09-154-P-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge committed reversible error by mischaracterizing her past relevant work, accepting "erroneous" testimony from a vocational expert, wrongly analyzing the severity of her fibromyalgia, wrongly discounting the credibility of her testimony, and assigning little weight to the opinion of an examining physician.  I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from the impairment of fibromyalgia which, while severe, did not meet or equal the criteria of any of the

---

[1] This action is properly brought under 42 U.S.C. § 405(g).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on December 18, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

impairments included in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 16-17; that she had the residual functional capacity to perform light work, except that she could not constantly push or pull with her upper or lower extremities, constantly reach overhead, climb, balance, stoop, kneel, crouch, or crawl more than occasionally, walk on uneven terrain, or work near unprotected heights, Finding 5, *id*. at 17; that she was capable of performing her past relevant work as a personal care attendant, Finding 6, *id*. at 19; and that she, therefore, had not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset, May 25, 2005, through the date of the decision (July 31, 2007), Finding 7, *id.*  The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work.  20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step, the commissioner must make findings of the plaintiff's residual functional capacity and the physical and mental demands of past work and determine whether the plaintiff's residual functional capacity would permit performance of that work.  20 C.F.R. § 404.1520(f);

2

Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## I. Discussion

The plaintiff presents four areas in which she contends that the administrative law judge committed reversible error.   Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 2-18.  I will consider each in the order presented by the plaintiff.

## A. Past Relevant Work

The plaintiff first asserts that the vocational expert who testified at the hearing on her claim mischaracterized her past relevant work as that of a "personal care assistant," when the work she described was actually that of a "home attendant."   *Id*. at 2-3.  It is true that the vocational expert described the plaintiff's past work as including "a couple of rather long periods of working as a personal care assistant, PCA."  Record at 235.  He assigned this work a code of 309.674-014 in the Dictionary of Occupational Titles, at the light exertional level with a specific vocational preparation (SVP) level of three.  *Id*.  Given the opportunity by the administrative law judge to question the vocational expert on this point, the attorney who represented the plaintiff at the hearing asked only whether "[t]he PCA" could be performed at a heavier exertional level, to which the vocational expert replied in the affirmative.  *Id*. at 235-36.  The administrative law judge did not ask the plaintiff at the hearing about the nature of her past work.  *Id*. at 230-50.

The vocational expert's use of the term "PCA" is not surprising, since the plaintiff used it herself in describing her past work in her written submissions.  *Id*. at 55, 65, 90, 92, 94.[2] However, the limited amount of information included in those written submissions about this work is, as the plaintiff contends, not consistent with the DOT code assigned by the vocational expert.   The duties described in the plaintiff's written materials consist of the following:

---

[2] The plaintiff refers interchangeably to her past work as that of a "PCA" or "CPA."

"Washed patien[t]s or shower.  Dressed them[,]" "Lifted patients out of bed in bathtub or on toilet[,]" *id*. at 92; "Washed patient that was in bed 24 hrs a day.  Turn every 2 hrs.  Put on bed pan[,]" "Carried laundry," *id*. at 94.  This is the only apparent evidence in the record from which the vocational expert could have drawn his conclusion.

The job of "personal attendant" carrying the DOT code cited by the vocational expert is described, in pertinent part, as follows in the Dictionary of Occupational Titles:

> Performs personal services to employer in private household: Brushes, cleans, presses, mends employer's clothing.  Lays out employer's clothing, and assists employer to dress.  Packs clothing for travel. Cleans employer's quarters.  Prepares bath.  Purchases clothing and accessories.  Answers telephone.  Drives car to perform errands.  Mixes and serves drinks.  May prepare and serve refreshments.  May shampoo and groom employer's hair, shave face, manicure nails, give body or facial massages, or apply cosmetics for employer.  May change linens, and make employer's bed.

Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) § 309.674-014.  This job is classified as light work, requiring frequent stooping and kneeling.  *Id*.  Certainly, this job would not be available to the plaintiff because the administrative law judge found that she could not stoop or kneel more than occasionally.  Record at 17.

The plaintiff points out that the job of home attendant as defined in the DOT more closely resembles the scant information in the record about her past work.  That job, which carries the DOT code 354.377-014, is described as follows:

> Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks:  Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters. Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets.  Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs. Assists patient to dress, bathe, and groom self.  Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation.  Administers prescribed oral medications under written direction of physician or as directed by home care nurse.

4

> Accompanies ambulatory patients outside home, serving as guide, companion, and aide. Entertains patient, reads aloud, and plays cards or other games with patient. Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients.

DOT § 354.377-014. This job is rated at the medium exertional level, with occasional stooping and crouching. *Id*.

While the administrative law judge's failure to inquire of the plaintiff about the details of this work as she performed it was error, the plaintiff does not explain how the error was other than harmless. As rated by the DOT, the home attendant job is outside the light exertional level to which the plaintiff was restricted by the administrative law judge, but as she described the work she did from 2001 to 2005, the exertion required was even less than that of the light exertional level. Record at 94. The itemized statement suggests that this "appears to be inconsistent with the fact that she had to turn the patient . . . every two hours," Itemized Statement at 3 n.5, but the burden at Step 4 of the sequential evaluation process remains with the claimant, and the claimant in this case was represented at the hearing by an attorney. Record at 228. The role of this court is to uphold the administrative law judge's decision if there is substantial evidence in the record to support it. *See generally Santiago v. Secretary of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991) (ALJ entitled to rely on claimant's own description of duties involved in former job).[3] The court's role is not to search out inconsistencies in the record that were not pointed out to the administrative law judge but could possibly be interpreted in the claimant's favor.

---

[3] Nor is the administrative law judge required, as counsel for the plaintiff suggested at oral argument, to assume that the plaintiff did not understand the questions asked of her on the benefit application forms, merely because two of her responses could possibly be interpreted as contradictory.

The general rule that the Social Security hearing is not an adversary proceeding applies not only to administrative law judges, but also to a claimant and his or her representative. A claimant's representative should not be able to refrain from pointing out an inconsistency in the record, *see also* Plaintiff's Hearing Memorandum, *id*. at 133-34, such as the one on which this claimant now relies, only to subsequently raise the alleged inconsistency on appeal, should the administrative law judge's decision not be in the claimant's favor.

While it is clear that the administrative law judge in this case failed to comply with the requirements of SSR 82-62 to determine the physical and mental demands of the claimant's past job and the fit between the residual functional capacity he assigned to the claimant and those demands, Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813, merely establishing this fact is not enough to warrant reversal of the commissioner's decision, contrary to the plaintiff's contention here. Itemized Statement at 5. As is apparent in *Bartlett v. Barnhart*, No. 05-23-B-W, 2005 WL 1923518 (D. Me. Aug. 9, 2005), the only case cited in this regard by the plaintiff, Itemized Statement at 5, the plaintiff must also demonstrate that this failure resulted in more than harmless error, *id*. at *2-*4. The plaintiff has not done so here, and therefore is not entitled to remand on this basis.

### B.  Severity of the Impairment

The plaintiff next contends that the administrative law judge erred in evaluating her fibromyalgia, which he found to be a severe impairment, "'amenable to treatment' and not disabling." Itemized Statement at 5-14. At oral argument, her attorney argued that fibromyalgia should have been found to meet a Listing at Step 2 of the sequential evaluation process and found to be disabling in that sense. He argued that this was also "an error at Step 4." But, her statement of errors appears to argue that she was entitled to benefits at Step 5 of the process,

where the inquiry is whether she is able to perform any other work.  The administrative law judge did not reach Step 5.  Therefore, I can only consider the plaintiff to assert *sub silentio* that the administrative law judge erred at Step 4 in finding that the plaintiff could return to her past relevant work.  Again, her written submission does not discuss why this might be so.[4]

Contrary to the plaintiff's contention, *id*. at 13, the administrative law judge did not rely on the "false premise . . . that there are 'objective' findings relative to fibromyalgia."  Such a premise would be relevant only to the question of whether the plaintiff's fibromyalgia was severe, at Step 2 of the sequential process, and the administrative law judge found that it was.  On the page cited by the plaintiff, the administrative law judge refers to "the lack of objective evidence *suggestive of disability*," Record at 19 (emphasis added), which is one of his considerations at Steps 4 and 5 of the sequential process.  Even with a finding that a claimant's fibromyalgia is severe, some objective findings are required in order to establish disability.  *See, e.g., Villalpando v. Astrue*, 320 Fed.Appx. 208, 211 (5th Cir. 2009); *Haislip v. Astrue*, 316 Fed.Appx. 538, 539 (9th Cir. 2008); *Hoffman v. Astrue*, 259 Fed.Appx. 213, 217-18 (11th Cir. 2007); *Miller v. Astrue*, 233 Fed.Appx. 590, 592 (8th Cir. 2007).

At oral argument, the attorney for the plaintiff contended, for the first time, that the First Circuit's unpublished decision in *Johnson v. Astrue*, 338 Fed.Appx. 3, 2009 WL 2151381 (1st Cir. July 21, 2009), required the administrative law judge to adopt the plaintiff's statements about each claimed symptom of her fibromyalgia and, presumably, each symptom's effect, if any, on her ability to perform work activities, unless there was substantial contradictory evidence in the record.  What the First Circuit actually said in *Johnson* is that, once an administrative law judge accepts the diagnosis of fibromyalgia in a claimant, he or she must conclude that the

---

[4] Certainly, mere diagnosis of fibromyalgia, without a finding as to severity of symptoms and limitations, does not mandate a finding of disability.  *Rivers v. Astrue*, 280 Fed.Appx. 20, 22 (2d Cir. 2008).

7

claimant suffers from the symptoms usually associated with fibromyalgia, unless there is substantial evidence to the contrary in the record. 338 Fed.Appx at 8, 2009 WL 2151381 at **5. Assuming *arguendo* that this court may consider this argument not raised in the plaintiff's itemized statement of errors, it does not follow that, because the plaintiff testified that she cannot use her hands,[5] the administrative law judge was required to find that she could not return to her past relevant work. Even if *Johnson* could be stretched to cover inability to use the hands, which, so far as appears, is *not* a "symptom[] usually associated with fibromyalgia," the administrative law judge cited record evidence inconsistent with this testimony. Record at 18-19.

The plaintiff asserts that the administrative law judge's conclusion that the treatment of her fibromyalgia was effective "is not supported in the record," although she does not support this assertion with citations to the record or any discussion of allegedly ineffective treatment. Itemized Statement at 13. To the contrary, the administrative law judge cited records from the plaintiff's treating physician, Dr. Mohlie, showing "that the claimant had full range of motion in her shoulder and neck, and [did] not mention any significant functional restriction (Exhibit 3F)"; that she exhibited some tenderness in the neck and scapular areas and in the sacroiliac joints, while demonstrating "good flexion and extension"; that she had intact strength and deep tendon reflexes; and that she had good range of motion and only slight tenderness in her knees. Record at 16-17. He also cites an examination done at Penobscot Bay Medical Center in January 2007 that "revealed no sensory or motor deficits and good strength in all four extremities (Exhibit

---

[5] The plaintiff refers to page 245 of the record, a page of the transcript of the hearing before the administrative law judge. Itemized Statement at 11. The plaintiff's testimony, when asked about a job "where you'd be at a desk or around a desk for most of a day," *id.*, was that she "wouldn't be able to use my hands, you know, doing the phone or typing that long." This is not a reference to "the one job that the ALJ relied on," as the plaintiff's attorney characterized it at oral argument, which was the plaintiff's past relevant work.

7F)." *Id*. at 17.  He discusses her medication history and reports to her physician that she was "doing fairly well" during the period from 2005 through 2007.  *Id*. at 18.

These observations are fully supported by the record citations given by the administrative law judge.  Nor do his conclusions "show that [he] impermissibly evaluated the evidence without guidance from a medical expert."  Itemized Statement at 13.  All of the objective information recited by the administrative law judge can be readily understood by a lay person.  In no sense was he "interpret[ing] raw medical data in functional terms."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## C.  Credibility Assessment

The plaintiff next attacks the administrative law judge's evaluation of her credibility as failing to comply with Social Security Ruling 96-7p and not supported by the record.  Itemized Statement at 14-15.  The administrative law judge devotes five paragraphs to his discussion of the plaintiff's credibility, Record at 18-19, and that discussion is based on more than the "skimpy hearsay references in medical records" and alleged "misunderstanding as to why she failed to attend an evaluation scheduled by the state disability agency," as the plaintiff contends.  Itemized Statement at 14.  To the extent that the plaintiff relies on the asserted failure of the administrative law judge to question her at the hearing about "her travel and other criticized activities or otherwise allowed her an opportunity for rebuttal," *id*. at 14-15, the burden of proof remains with the plaintiff in this case and, as she herself notes, *id*. at 15, the hearing is not adversarial. Particularly when, as in this case, a claimant is represented by an attorney at the hearing, the administrative law judge cannot be required by law to make the plaintiff's case for her.

9

Even if the plaintiff's characterization of the administrative law judge's credibility finding, as being based solely on "skimpy hearsay" from medical records[6] and a misunderstanding about her reason for failing to attend a scheduled evaluation, is correct, which it is not, questions about "where she had gone and what she had done while she was away," *id*. at 15, are simply not relevant to an evaluation of whether that travel was consistent with the degree of disabling symptoms recited by the plaintiff in her testimony. The plaintiff essentially attacks the weight given various events by the administrative law judge in his evaluation of her credibility, *id*. at 15-17, but the weight to be given a particular piece of information is a matter generally to be determined by the administrative law judge. The plaintiff has not offered any persuasive reason to deviate from that principle in this case.

I agree, however, that the administrative law judge's use of the plaintiff's failure to attend two consultative evaluations scheduled by the state disability agency to question her credibility, Record at 19, was improper, where the reason for those failures was the advice of her attorney. *Id*. at 130, 131, 234. That error does not require remand, because the administrative law judge provided sufficient reasons for discounting the plaintiff's testimony, independent of those events.

## D.  Weight Assigned to Dr. Graf's Opinion

The final issue raised by the plaintiff is her contention that the administrative law judge "erroneously dismissed" the opinions of Dr. Graf (a physician to whom she was sent for evaluation by her attorney, *id*. at 218) that her medical condition was equivalent to Section 1.04 of the Listings and that she had less than a sedentary work capacity.[7] Itemized Statement at 18.

---

[6] Either Social Security hearing procedures are non-adversarial, *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) (and cases cited therein), in which case hearsay can be considered, *Richardson v. Perales*, 402 U.S 389, 407-10 (1971); *Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 724 n.4, 2004 WL 2725964 (6th Cir. Dec. 1, 2004) at **4 n.4, or they are not. The plaintiff cannot have it both ways.

[7] Either of these opinions is the equivalent of a finding that the claimant is disabled, a judgment that is reserved to the commissioner. 20 C.F.R. § 404.1527(e).

Contrary to her assertion, it was not necessary for the administrative law judge to "improperly interpret[] raw medical evidence to conclude that Dr. Graf's opinion was 'inconsistent with the longitudinal evidence from claimant's treating physician.'" *Id.*   The administrative law judge's stated reasons are based on specific record evidence that can be understood by a lay person and are set forth in sufficient detail.  Record at 16-17, 19.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.


### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of December, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge